### In re ALTON NEWTON EVANGELISTIC ASSOCIATION, INC., Debtor.

### ALTON NEWTON EVANGELISTIC ASSOCIATION, INC., Plaintiff,

v.

### SOUTH CAROLINA TAX COMMISSION, Defendant.

Bankruptcy No. 82–01208.
Complaint No. 82–0958.

United States Bankruptcy Court, D. South Carolina.

Feb. 22, 1983.

George G. Reaves, Florence, S.C., for plaintiff.

Ronald W. Urban, Asst. Atty. Gen., State of S.C., Columbia, S.C., for defendant.

1. Further reference to sections of the 1978 Code will omit the identically numbered section of Title 11, United States Code.

2. § 1107(a): Subject to any limitations on a trustee ... a debtor in possession shall have all the rights, other than the right to compensation ..., of a trustee serving in a case under this chapter.

3. § 541(a): The commencement of a case under section 301, 302, or 303 of this title creates an estate. Such estate is comprised of all the following property, wherever located: (1) Except as provided in subsections (b) and (c)(2) of this section, all legal or equitable interests of

## ORDER

J. BRATTON DAVIS, Bankruptcy Judge.

In this adversary proceeding the plaintiff is seeking to compel the defendant to turn over funds to it pursuant to § 542(a) of the Bankruptcy Code (11 U.S.C. § 542(a)).[1]

## FACTS

Alton Newton Evangelistic Association, Inc. (Alton Newton), operated a nursing home to which the South Carolina Department of Social Services (DSS) was indebted.

On July 16, 1982, the South Carolina Tax Commission (the Tax Commission), served upon Alton Newton a notice of levy which stated that the funds held by DSS were levied upon in the amount of $20,293.91 for delinquent taxes owed by Alton Newton to the Tax Commission.

On July 28, 1982, when Alton Newton filed a petition for relief under Chapter 11 of the Bankruptcy Code, it became a debtor in possession pursuant to § 1107(a).[2]

On August 18, 1982, the Tax Commission took possession of the funds held by DSS.

The Tax Commission asserts that its prepetition notice of levy was evidence of a levy which prevented the DSS funds from becoming "property of the estate" under § 541(a)(1)[3], and, if the funds are not "property of the estate", Alton Newton has no right to the property by reason of the turnover provisions of § 542(a).[4]

Alton Newton contends that inasmuch as the seized funds are "property of the es-

the debtor in property as of the commencement of the case.

4. § 542(a): Except as provided in subsection (c) or (d) of this section, an entity, other than a custodian, in possession, custody, or control, during the case, of property that the trustee may use, sell, or lease under section 363 of this title, or that the debtor may exempt under section 522 of this title, shall deliver to the trustee, and account for, such property or the value of such property, unless such property is of inconsequential value or benefit to the estate.

tate" because the notice of levy was not, in fact, a levy passing the property's title to the Tax Commission, the Commission is in violation of the § 362(a)[5] stay provisions as a result of their seizure of the funds after the petition for relief was filed.

## ISSUES

The issue is whether the property seized by the Tax Commission is "property of the estate" (as defined in § 541 which, under §§ 363(b) and 363(c)(1)[6], can be used, sold, or leased by Alton Newton in the operation of its business pursuant to § 1108[7]) and, as such, is subject to turnover to Alton Newton pursuant to § 542(a).

## DISCUSSION AND CONCLUSION

To determine whether the debt owed by DSS to Alton Newton is "property of the estate", the court must first consider the effect of the notice of levy on the property.

The Tax Commission's authority to levy on intangibles is set forth in S.C.Code § 12–53–20 (1976), which states:

Notwithstanding any other provision of law, the Commission, or its duly authorized representatives, may attach, levy upon, or seize bank deposits and all other choses in action, except for salaries and wages, on property incapable of manual levy or delivery, hereinafter called intangible, belonging, owing, or to become due to any taxpayer, subject to any provisions of any tax or license law of which the administration, enforcement, and collection is imposed upon the Commission. The person owning such intangible, matured or unmatured, or having the same in possession or control, shall become liable for all sums due by the taxpayer to the extent of the amount of the intangible belonging, owing, or to become due to the taxpayer, subject to the setoff of any matured or unmatured indebtedness of a taxpayer to said person. To effect such attachment or levy, the Commission, or its duly authorized representative, shall serve, or cause to be served upon the taxpayer and upon such person, notice of such attachment and levy, which notice may be served by any authorized representative of the Commission, or by any officer having authority to serve summonses.

Because it deals with intangibles—property which is defined as "a 'right' rather than a physical object,"[8]—the quoted section sets forth a notice procedure to evidence the fact that a levy has been made.[9]

---

**5.** § 362(a): Except as provided in subsection (b) of this section, a petition filed under section 301, 302 or 303 of this title operates as a stay, applicable to all entities, of—(1) the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title; (2) the enforcement, against the debtor or against property of the estate, of a judgment obtained before the commencement of the case under this title; (3) any act to obtain possession of property of the estate or of property from the estate; (4) any act to create, perfect, or enforce any lien against property of the estate; (5) any act to create, perfect, or enforce against property of the debtor any lien to the extent that such lien secures a claim that arose before the commencement of the case under this title; (6) any act to collect, assess, or recover a claim against the debtor that arose before the commencement of the case under this title; ....

**6.** § 363(b): The trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate.

§ 363(c)(1): If the business of the debtor is authorized to be operated under section 721, 1108, or 1304 of this title and unless the court orders otherwise, the trustee may enter into transactions, including the sale or lease of property of the estate, in the ordinary course of business, without notice or a hearing, and may use property of the estate in the ordinary course of business without notice or a hearing.

**7.** § 1108: Authorization to operate business. Unless the court orders otherwise, the trustee may operate the debtor's business.

**8.** Black's Law Dictionary 726 (5th ed. 1979).

**9.** Perfection of accounts and contract rights (intangibles) under the South Carolina Uniform Commercial Code must be evidenced by filing because possession is impossible. § 36–9–302 Official Comm. No. 5.

The service of notice is not to warn of an impending levy but rather to "effect such attachment or levy." *Id.*

The court concludes that the levy here was pre-petition—having occurred upon the service of notice of levy on Alton Newton on July 16, 1982.

The issue of whether property subject to a pre-petition levy becomes "property of the estate" pursuant to § 541(a), was resolved by the United States Court of Appeals for the Fourth Circuit in *Cross Electric Co. v. United States,* 664 F.2d 1218 (4th Cir.1981), which held that a pre-petition Internal Revenue Service levy on an account receivable of a debtor operated as a virtual transfer of the account to the government. The court stated that the debtor had the right to redeem the property levied on by payment of the taxes due, with costs, but "absent such payment, neither the debtor nor its trustee has any right to the possession of the property, . . . ." *Id.* at 1221; *See also, Ford v. Southern Bank & Trust Co.,* 24 B.R. 616, 618 (Bkrtcy.D.S.C.1982), *appeal dismissed* (D.S.C. October 18, 1982).

The effect of the levy by the Tax Commission is substantially the same as the effect of the tax levy in *Cross Electric.* In both instances, the levies deprived the debtor of possession of personal property leaving him only the right of redemption by payment of the debt. *Ford v. Southern Bank & Trust Co., supra.*

The funds are not "property of the estate" as defined in § 541; therefore, the debtor in possession, Alton Newton, is not entitled to turnover pursuant to § 542(a).

Because the funds are not "property of the estate," the Tax Commission did not violate the § 362 stay by taking possession of the funds after Alton Newton's filing the petition for relief. *See, McCauley v. Levaine,* Case No. 82–00856, Complaint No. 82–0803 (Bkrtcy.D.S.C. Jan. 19, 1983); *First Savings and Loan Assoc. v. Reece,* Case No. 82–01714, Complaint No. 82–1132 (Bkrtcy. D.S.C. Dec. 12, 1982); *Ford v. Southern Bank & Trust Co., supra; Campbell v. General Motors Acceptance Corp.,* 20 B.R. 42 (Bkrtcy.D.S.C.1982); *Hildreth v. Dean-*

*Dempsey Corp.,* Case No. 81–81–00764, Complaint No. 81–0477 (Bkrtcy.D.S.C. July 12, 1982); *Lexington State Bank v. Miller,* Case No. 82–01174, Complaint Nos. 82–0829 and 82–0845 (Bkrtcy.D.S.C. Sept. 13, 1982).

### ORDER

It is, therefore, ORDERED, ADJUDGED AND DECREED that the complaint is hereby dismissed and judgment entered for the defendant.